# IN THE COURT OF APPEALS OF IOWA

———————

No. 26-0293
Filed June 10, 2026

———————

**In the Interest of A.W., Minor Child,**

**D.W., Father,**
Appellant.

———————

Appeal from the Iowa District Court for Polk County,
The Honorable Jordan Brackey, Judge.

———————

**AFFIRMED**

———————

Heidi Miller of Des Moines Juvenile Public Defender, Des Moines,
attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, attorney and
guardian ad litem for minor child.

———————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

"We've been involved in this family's life for over two years now, and we are still in the same position." This statement from the social work case manager captures the challenges the father faces in this appeal. The juvenile court terminated his parental rights to his two-year-old daughter, A.W. Upon our de novo review of the record, we affirm.[1]

## I.     Facts and Prior Proceedings

The termination proceedings involved a mother, her three children, and their fathers. This appeal focuses on A.W. and her father, Devon.[2] The family came to the attention of the Iowa Department of Health and Human Services in August 2023 after reports that Devon assaulted the mother and one of her children. The mother was pregnant with A.W. at the time. A no-contact order was entered but later dropped.

The following February, when A.W. was just a few months old, Devon assaulted the mother while she was holding the infant and in the presence of the other children. The mother told investigators that Devon went to hit her and when she dodged his hand, he struck A.W. Investigations into both incidents of domestic violence resulted in founded child-abuse assessments. After the second assault, the State charged Devon with domestic abuse assault, child endangerment, and probation violations.

---

[1] We review termination proceedings de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly regarding credibility determinations." *Id.*

[2] The juvenile court terminated the parental rights of all parents, including any unknown and putative fathers, to these children. The other parents are not a part of this appeal. Devon has another child, but she was not a part of the termination proceedings.

Devon was not the only parent facing criminal charges. In July 2024, the mother was jailed for operating while intoxicated. The parents consented to the children's removal. The department placed A.W. with her paternal grandparents. By the end of the month—with both parents still in custody—the court adjudicated A.W. as a child in need of assistance (CINA). In November, the mother was released from jail to a residential center but absconded. She did not turn herself in until April.

As for Devon, he pleaded guilty to the pending charges. In March, he was released on probation. On the one hand, he struggled to comply with the rules. He returned two positive urinalysis tests—one for THC and another for synthetic cannabinoids. For one sweat patch test, he delayed applying it and when he returned it, the inner surface was missing. He also failed to comply with GPS monitoring. On the other hand, he engaged in some services. He completed the Iowa domestic abuse program (IDAP). He also started mental-health therapy, and he attended two sessions with his substance-use provider. And he had visits with A.W. at the local library.

Despite those small steps, Devon's relationship with A.W.'s mother remained tumultuous. Ignoring their history of domestic violence, the mother and Devon had 148 calls while the mother was in jail. In June, the department learned the mother was pregnant. Devon was likely the father. When the mother returned to the residential facility, they continued to communicate, despite cautions from probation officers not to have contact. Within a week, the mother reported that Devon threw her from a car, resulting in road rash. Shortly after, she alleged that Devon, along with another man, sexually assaulted her.[3] No criminal charges were pursued.

---

[3] In its permanency order, the juvenile court made findings that these reports were "credible as they were admissions against her own interests. . . . She made these

At a permanency hearing in the fall of 2025, the court abandoned the goal of reunification. Yet the court encouraged the parents to continue participating in services so they could best defend against termination.

But at the termination hearing in late November, circumstances were not improved. Devon was back in jail for violating his probation. And he faced revocation of his probation for child endangerment and domestic abuse assault, the crimes that triggered the department's involvement. Following this hearing, the juvenile court terminated his parental rights. He appeals.

## II.    Analysis

Termination cases involve three steps. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). First, the State must prove a basis for termination under Iowa Code section 232.116(1) (2025). *Id.* Second, the State must show termination is in the child's best interests under section 232.116(2). *Id.* Third, parents may establish exceptions to termination under section 232.116(3). *Id.* We only address those steps that the parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

---

admissions and accusations knowing that her continued clandestine contact with Devon was putting her probation status at risk." At the termination hearing, the father exercised his Fifth Amendment right to remain silent regarding these uncharged incidents. The juvenile court reiterated its credibility findings and took "an adverse inference from Devon's Fifth Amendment invocations due to the fact that [the mother] had made numerous statements implicating Devon in abusive behavior that she must have believed were against her interest at the time she made those statements."

Devon contests the first two steps.[4] He also requests six more months to reunite with A.W. In the alternative, he requests we place A.W. in a guardianship with her paternal grandmother. We address each issue in turn.

## A. Statutory Ground for Termination

The juvenile court terminated Devon's parental rights under Iowa Code section 232.116(1)(h). Under that ground, the State must prove that the child (1) is three years old or younger; (2) has been adjudicated as a CINA; (3) has been removed from the parents' physical custody for at least six months; and (4) cannot be returned to the father's custody at the present time. Iowa Code § 232.116(1)(h); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (construing "at the present time" as the date of the termination hearing).

Devon argues the State failed to prove the fourth element by clear and convincing evidence. He points to his engagement in substance-use treatment and therapy, as well as his completion of IDAP. While worthy efforts, they do not show that A.W. could have safely returned to his custody on the date of the termination hearing. Devon could not take physical custody of A.W. because he was in jail, facing possible revocation of his probation. And even if he had been available to provide care, the child's safety was still at risk. The district court believed the mother's allegations that Devon had continued the abusive behavior that led to A.W.'s removal. We find the State proved this statutory ground. *See L.M.*, 904 N.W.2d at 839.

---

[4] As to the third step, he points to the parent-child bond described in section 232.116(3)(c) yet offers no argument. So, we decline to address this issue.

## B. Best Interests

Next, Devon argues termination is not in A.W.'s best interests. In assessing best interests, the child's safety is our top priority; then we consider the best placement for furthering her long-term nurturing and growth; and her physical, mental, and emotional condition and needs. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (discussing Iowa Code § 232.116(2)).

Devon claims the State has not made "any showing that the child is suffering due to uncertainty in this case." But uncertainty is not the only measure of best interests. As the State argues, Devon has not been "a safe and stable parent." This case began because of his domestic violence and child abuse. At the time of the termination hearing, the father was back in jail for violating probation on those very charges. Beyond that, the district court found the mother's additional accusations credible. Even if those accusations were not credible, the parents still communicated with each other, knowing it hurt their chances to reunite with A.W. By continuing to remain so ingrained in the mother's life and by disregarding the negative impact of that toxic relationship on A.W., Devon cannot meet A.W.'s physical, mental, and emotional needs.

At the termination hearing, Devon recognized that domestic violence caused trauma for children. But that recognition had not deterred him from continuing contact with the mother. He admitted contacting her just three days before the hearing, while insisting they "haven't been together." Devon was likewise inconsistent when discussing his substance use. He acknowledged that he should engage in more treatment. But he also maintained that he did not have a substance-use issue. His inability to take accountability for his actions shows he will struggle to provide long-term nurturing and growth to A.W.

For these reasons, we find the State met its burden to show termination was in A.W.'s best interests.

### C. Six-Month Extension

Devon also requests more time to work toward reunification. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter a permanency order under section 232.104). But to continue placement for six months, section 232.104(2)(b) requires the court to decide "the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We cannot make that finding here. Devon's future was uncertain. He had no idea when he would get out of jail. In fact, he acknowledged facing a possible nine-year sentence if his probation were revoked. We must also consider whether waiting longer for permanency is in the child's best interests. *See W.T.*, 967 N.W.2d at 323; *see also* Iowa Code § 232.116(2). Given this uncertainty, delaying permanency is unwarranted. Rather, A.W.'s best interests are served by termination.

### D. Guardianship

Lastly, we assess whether it would be better to create a guardianship for A.W. Generally, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Guardianships offer less stability because they can be changed or terminated. *In re A.M.*, No. 20-1008, 2020 WL 7021576, at *3 (Iowa Ct. App. Nov. 30, 2020). Sometimes establishing a guardianship is the best solution. *See B.T.*, 894 N.W.2d at 34. But not when the child is "too young to express a preference" or the guardianship could stretch for many years. *A.S.*, 906 N.W.2d at 478. Here, A.W. is two years old—too young to voice her preference. And in the sixteen years until she

7

reaches majority, she could lose stability if Devon interferes with the guardianship.

**AFFIRMED.**